UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN M. SHOTTS,

    Plaintiff,

v.                                                                                                   Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,                    Case No. 1:23-cv-807

    Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security finding that, due to medical improvement, Plaintiff was no longer disabled as of April 30, 2020, and thus not eligible for Disability Insurance Benefits under Title II of the Social Security Act after that time. The parties have agreed to proceed in this Court for all further proceedings, including entry of an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. For the following reasons, the Court Commissioner's decision will be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of*

*Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. See 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

On October 28, 2011, the Social Security Administration (SSA) found Plaintiff disabled as of May 21, 2011. (PageID.34, 101.) For purposes of continuing disability review, the October 28, 2011 decision is referred to as the "comparison point decision" (CPD). (PageID.36.) In February 2020, the SSA determined that Plaintiff's disability ceased as of February 14, 2020, and that his period of disability terminated as of April 30, 2020. (PageID.94, 99.) On June 28, 2021, upon reconsideration, an SSA Disability Hearing Officer upheld the cessation determination. (PageID.100–06.)

Plaintiff subsequently requested a hearing before an Administrative Law Judge (ALJ). On May 6, 2022, ALJ Robert J. Chavez held a hearing by telephone, during which Plaintiff and Heather Benton, an impartial vocational expert (VE), testified. (PageID.53–78.) On June 17, 2022, ALJ Chavez issued a written decision finding that Plaintiff's disability ended on April 30, 2020, and that Plaintiff had not become disabled again since that date.[1] (PageID.34–45.) The Appeals Council denied Plaintiff's request for review on June 13, 2023. (PageID.20–22.) The ALJ's ruling thus became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007). Plaintiff timely initiated this civil action for judicial review on July 31, 2023.

## ANALYSIS OF THE ALJ'S DECISION

The Social Security Act provides that disability benefits may be terminated if "the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling." 42 U.S.C. § 423(f). Termination of benefits must be supported by substantial evidence that: (1) there has been medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (2) the individual is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1)(A)–(B); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

The social security regulations articulate an eight-step sequential process by which determinations of continuing disability are made. *See* 20 C.F.R. §§ 404.1594. If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. The steps of this sequential process are as follow:

---

[1] As Plaintiff notes, although the initial determination concluded that Plaintiff's disability ceased on February 14, 2020, the ALJ determined that Plaintiff's disability ceased on April 30, 2020—the date Plaintiff's benefits were to cease. (ECF No. 9 at PageID.678.) This discrepancy is immaterial to determination of the issues Plaintiff raises on appeal.

3

> (1)  Is the individual engaging in substantial gainful activity;
>
> (2)  Does the individual have an impairment or combination of impairments which meets or equals in severity an impairment identified in the Listing of Impairments;
>
> (3)  Has the individual experienced a medical improvement;
>
> (4)  Is the improvement related to the individual's ability to work (i.e., has there been an increase in the individual's residual functional capacity based on the impairment(s) present at the time of the most recent favorable medical determination);
>
> (5)  If the individual has either not experienced a medical improvement or any such improvement is unrelated to his ability to perform work, do any of the exceptions to the medical improvement standard apply;
>
> (6)  Does the individual suffer from a severe impairment or combination of impairments;
>
> (7)  Can the individual perform his past relevant work;
>
> (8)  Can the individual perform other work.

20 C.F.R. § 404.1594(f).

When the Commissioner evaluates whether a claimant continues to qualify for benefits, the claimant is not entitled to a presumption of continuing disability. *See Cutlip*, 25 F.3d at 286. Rather, the decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition." *Id.* However, the Commissioner has the burden of proof that a claimant has experienced medical improvement which renders him capable of performing substantial gainful activity. *See, e.g.*, *Kennedy v. Astrue*, 247 F. App'x 761, 764–65 (6th Cir. 2007); *Couch v. Comm'r of Soc. Sec.*, No. 1:11-cv-174 2012 WL 394878, at *10 (S.D. Ohio Feb. 7, 2012), *report and recommendation adopted in part*, 2012 WL 930864 (S.D. Ohio Mar. 19, 2012).

The ALJ determined that, as of the date of the CPD, October 28, 2011, Plaintiff suffered from medically determinable impairments of delusional disorder; psychotic disorder; and schizoaffective disorder, which precluded him from working. (PageID.36.) The ALJ next

4

determined that Plaintiff had not engaged in substantial gainful activity through the date of the decision. (*Id.*) The ALJ determined that as of April 30, 2020, Plaintiff had medically determinable impairments of bipolar disorder and schizoaffective disorder, neither of which, alone or in combination, met or medically equaled the severity of an impairment in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ next determined that as of April 30, 2020, Plaintiff had experienced "medical improvement" in his impairments, based on recent evidence showing that Plaintiff's mental status examinations were generally within normal limits. (PageID.38.)

The ALJ determined that Plaintiff's improvement was related to his ability to work because, by April 30, 2020, Plaintiff's CPD impairments no longer met or equaled the listing that had been met at the time of the CPD. (PageID.38.) Finding that Plaintiff continued to have severe impairments since April 30, 2020, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, except:

> [T]he claimant can perform simple, routine, and repetitive work, not at a production rate and pace, and thus be unable to learn tasks that required instruction beyond a short demonstration up to and including one month to learn, and would be limited to applying commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations. He can perform simple work-related decisions. He can interact with supervisors, coworkers, and the public occasionally. The claimant can tolerate few changes in a routine work setting defined as occasional changes in the work setting.

(PageID.38–39.)

Based on this RFC, the ALJ determined that Plaintiff was unable to perform his past relevant work. (PageID.44.) The ALJ questioned the VE to determine whether other work existed that Plaintiff could perform consistent with his RFC. Based on the VE's testimony, the ALJ determined that an individual of Plaintiff's age, education, work experience, and RFC would be able to perform occupations such as housekeeping and cleaner, with approximately 1.3 million

jobs existing in the national economy. (PageID.44–45.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'"). Accordingly, the ALJ concluded that Plaintiff was no longer disabled as defined by the Social Security Act.

## DISCUSSION

Plaintiff raises the following three issues in his appeal: (1) whether the ALJ erred by not applying the "medical improvement" standard prior to concluding that "there has been improvement" in the plaintiff's medical condition, as required by 20 C.F.R. § 404.1594; (2) whether substantial evidence supports a finding that Plaintiff can perform sustained work activities; and (3) whether the ALJ committed legal error in not considering and addressing the underlying and supporting evidence which supported the Veterans Administration's (VA) finding of 40% disability, which was a 10% increase during the same time the ALJ found Plaintiff's disability decreased. (ECF No. 9 at PageID.671.)

**I.  Medical Improvement**

The gist of Plaintiff's first ground of error is not entirely clear. While the issue is framed as the ALJ erred in finding medical improvement, he argues that in spite of medical improvement, his RFC remained work preclusive. The relevant regulations define "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A finding that a claimant has experienced "a decrease in medical severity" must be "based on changes (improvements) in the symptoms, signs, or laboratory findings associated with your impairment(s)." 20 C.F.R. § 404.1594(b)(1).

The CPD determined that Plaintiff was disabled in 2011 because his medically determinable impairments met the requirements of listing 12.03. (PageID.36, 89.) The ALJ found that Plaintiff had experienced medical improvement based on recent evidence from 2019 and 2020 showing that, during medical visits, Plaintiff presented as fully oriented, friendly, and cooperative, with intact memory, good insight and judgment, and normal thought processes. (PageID.37–38, 505, 554.) The ALJ further noted that most recent mental status exam findings were within normal limits. (PageID.38, 505, 516, 521, 526, 556, 558, 597, 602.) Although the ALJ noted that, following a consultative examination in June 2021, Laura Kracker, M.A., LLP, and William Brooks, Ed. D., assessed Plaintiff with marked limitations, the ALJ observed that these findings were based almost entirely on Plaintiff's self-report and were inconsistent with the record as a whole, which reflected largely normal mental status examinations and stable mental health and consistent treatment. (PageID.38.) Plaintiff concedes medical improvement by his acknowledgement that he "was less bothered by his severe mental diseases in 2020 than he was in 2011." (ECF No. 9 at PageID.678.) In the same vein, Plaintiff testified that he was going through a divorce in 2011 that exacerbated his symptoms, but at the time of the hearing, he had only "[a] little bit" of stress associated with work and finances. (PageID.70–71.) Thus, the ALJ's finding of medical improvement was fully supported.

Plaintiff argues that, in spite of improvement, the ALJ still erred because there was no improvement in Plaintiff's ability to work. He notes that his bi-polar and schizoaffective disorders remained severe impairments; he continued to receive psychotic medicine for his disease; while he worked part-time, his earnings did not amount to substantial gainful activity; and upon examination, Ms. Kracker and Dr. Brooks opined that Plaintiff "may likely have" moderate limitations in essentially all areas, including understanding, remembering, and applying

7

information and concentrating, persisting, and maintaining pace (CPP). Plaintiff further contends that the ALJ should have given this opinion "full weight," which would have resulted in loss of functioning that would have been work preclusive. (ECF No. 9 at Page ID.678–79.)

The ALJ determined that the medical improvement was related to Plaintiff's ability to work because Plaintiff no longer met the requirements of the version of listing 12.03 in effect at the time of the CPD. He found that, under the pertinent listing's requirements, Plaintiff was mildly limited in activities of daily living, moderately limited with social functioning and CPP, and had no episodes of decompensation. (PageID.38.) As support, the ALJ cited Plaintiff's hearing testimony describing his self-employment business of producing and selling restaurant placemats with advertising that involved a wide variety of activity, including soliciting business, getting business cards, and traveling in several counties to conduct his business. The ALJ also cited Plaintiff's interests in chess, fishing, hunting, fixing motorcycles, and working on his antique speedboat that he reported during a February 2020 adult mental status examination by Timothy Strang, Ph.D.; his normal mental status examinations and mental stability with consistent mental health treatment; and the extensive daily activities that Plaintiff's wife reported. (PageID.38, 339–42, 549.) Given the ALJ's finding that Plaintiff no longer met listing 12.03—which Plaintiff does not dispute—the ALJ properly determined that Plaintiff's improvement related to Plaintiff's ability to work, as authorized by the pertinent regulation. *See* 20 C.F.R. § 404.1594(c)(3)(i) ("If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work."). In sum, the ALJ's finding of work-related medical improvement was supported by substantial evidence.

Plaintiff's arguments concerning the limitations opined by Ms. Kracker and Dr. Brooks are unpersuasive. The ALJ did not reject the opinion completely, but he was entitled to disregard any limitation supported only by Plaintiff's subjective reports. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273-74 (6th Cir. 2010) (finding that the ALJ did not err in rejecting a medical opinion premised upon claimant's subjective complaints that were not supported by objective medical evidence); *Owens v. Comm'r of Soc. Sec.*, No. 3:20-CV-1737, 2021 WL 8342841, at *6 (N.D. Ohio Sept. 15, 2021), *report and recommendation adopted*, 2023 WL 6283030 (N.D. Ohio Sept. 27, 2023) ("The ALJ was entitled to discredit Dr. Onamusi's opinion for relying on such complaints as long as he explained his finding—which he specifically did. As such, the ALJ satisfied his requirement of discussing the supportability of Dr. Onamusi's opinion."). Moreover, apart from relying on Plaintiff's subjective reports, the ALJ found that the opinion's more restrictive limitations were inconsistent with the record as a whole. (PageID.38, 43.)

As for Plaintiff's contention that the ALJ "failed to include moderate deficiencies of [CPP] in a hypothetical question to the VE" (ECF No. 9 at PageID.679), Plaintiff cites no authority requiring an ALJ to specifically reference "moderate limitations" in a hypothetical to a VE. In any event, in contrast to the cases Plaintiff cites, including *Green v. Commissioner of Social Security*, No. 08-CV-11398, 2009 WL 2365557 (E.D. Mich. July 28, 2009), *Benton v. Commissioner of Social Security*, 511 F. Supp. 2d 842 (E.D. Mich. 2007), and *Edwards v. Barnhart*, 383 F. Supp. 2d 920 (E.D. Mich. 2005), which remanded because of the ALJ's failure to include a specific limitation in the hypothetical to the VE addressing the claimant's moderate CPP limitations, here, the ALJ included such a limitation—no work performed "at a production rate and pace"—in his hypothetical to the VE, which adequately addressed Plaintiff's moderate limitation. (PageID.39, 74.) *See Russell v. Berryhill*, No. 16-13637, 2017 WL 6803384, at *4 (E.D. Mich. Nov. 20, 2017),

9

*report and recommendation adopted*, 2018 WL 262925 (E.D. Mich. Jan. 2, 2018) (limitation of "no fast paced production work where the pace is set by others" adequately accounted for the plaintiff's moderate CPP difficulties); *Schaefer v. Comm'r of Soc. Sec.*, No. 13-10105, 2014 WL 562436, at *10–11 (E.D. Mich. Feb. 13, 2014) (distinguishing the case from *Green* and *Edwards* based on the ALJ's inclusion of "an explicit pace limitation: 'he has the ability to understand, remember, and carry out simple instructions and perform simple tasks with no production rate pace work, but rather goal-oriented work'" (brackets omitted)). Other than presenting his general disagreement with the ALJ's decision, Plaintiff fails to explain why this and the many other non-exertional limitations the ALJ included in his RFC finding and hypothetical failed to account for his mental impairment symptoms.

In his final point in this argument, Plaintiff contends that the ALJ erred in failing to account for Plaintiff's back pain or his obesity. (ECF No. 9 at PgeID.679–80.) But as the ALJ explained, the medical record lacked evidence showing that Plaintiff's back pain and obesity caused functional or work-related impairments for the requisite 12-month period, and they were not severe impairments. (PageID.38–39.) Plaintiff bears the ultimate burden of producing sufficient evidence to show that he is disabled. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Counsel's argument in his brief that the low back is weight supporting and that excess weight affects the nerves and increases pain is not a substitute for competent evidence. Because Plaintiff points to no evidence in the record supporting exertional limitations based on his back pain and obesity, this argument fails.

Accordingly, Plaintiff's first claim of error lacks merit.

**II.     Plaintiff's RFC**

In his second claim of error, Plaintiff contends that the ALJ's RFC is flawed because the evidence demonstrates that Plaintiff is incapable of sustaining full time competitive employment.

10

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* SSR 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). "An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). In determining a claimant's RFC, the ALJ considers medical source statements and all other evidence of record. 20 C.F.R. § 404.1545(a)(3). While the ALJ makes the RFC determination, that determination must be supported by substantial evidence. *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012).

      The ALJ's decision shows that he properly evaluated the record as a whole in accordance with the pertinent regulations. 20 C.F.R. §§ 404.1529(c), 404.1545(a)(3). For example, in addition to citing the largely normal mental status examinations mentioned above, the ALJ noted that office visit notes from October 2018, February 2019, May 2019, and August 2019 reflected Plaintiff's reports of no anxiety, depression, or insomnia and indicated that he was oriented with normal insight, judgment, and memory and appropriate mood and affect. (PageID.41, 515–16, 521, 530, 538.) The ALJ also noted that Dr. Thakur's medication management notes from December 2018 and June and December 2019 indicated that Plaintiff's depressed bipolar disorder was in partial remission, his sleep was intact, and he reported that he was doing well working part-time and that his job was going well. In addition, during the December 2019 visit, Plaintiff said that he was going to a concert in Grand Rapids to watch his favorite band. (PageID.41, 504–05, 507, 558.)

11

The ALJ also considered, among other things, Plaintiff's reported daily activities, which included keeping track of medications and appointments, visiting with friends regularly, leaving the house up to three times per day, attending church two-to-three times a week, driving, and doing household chores. In addition, although it did not amount to SGA, the ALJ properly considered Plaintiff's part-time self-employment selling advertisements for restaurant placemats and his other work activities as indicative of Plaintiff's capacity to perform sustained work. (PageID.37, 41, 43.) Indeed, the regulations permit an ALJ to consider how such evidence bears on a claimant's alleged work limitations: "Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did." 20 C.F.R. § 404.1571; *see also Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (stating that "the ALJ did not err by considering Miller's ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled"); *Young v. Astrue*, No. 2:12–cv–00050, 2013 WL 4456250, at *14 (M.D. Tenn. Aug. 15, 2013), *report and recommendation adopted*, 2014 WL 3724844 (M.D. Tenn. July 25, 2014) ("As for the claim that the ALJ improperly relied on plaintiff's part-time employment to discredit her credibility, it was entirely within the ALJ's discretion to consider plaintiff's part-time job as a daily activity in making her credibility determination.").

The ALJ also considered the opinion evidence in accordance with 20 C.F.R. § 404.1527.[2] The ALJ considered opinions from State agency psychological consultant Ruqiya Tareen, M.D., consultative examiner Timothy Strang, Ph.D., state agency psychological consultant Larry Irey,

---

[2] Because Plaintiff's initial application and the CPD occurred before the March 27, 2017 effective date of the more recent regulation governing evaluation of opinion evidence, 20 C.F.R. § 404.1520c, the ALJ applied the former regulation. *See Hearing, Appeals, and Litigation Law Manual* (HALLEX) I-5-3-30 IV(E), available at https://www.ssa.gov/OP_Home/hallex/I-05/I-5-3-30.html (last visited Apr. 5, 2024).

12

Ph.D., and Ms. Kracker and Dr. Brooks. (PageID.41–43.) The ALJ assigned the opinions some weight and limited weight, generally adopting their opined moderate limitations, but finding that Plaintiff was more limited in social interaction and adaptation than the doctors found. The Court finds that the ALJ properly evaluated the opinions under the applicable regulation and adopted the limitations these sources assessed that were supported by, and consistent with, the record as a whole. Moreover, as the Court has already explained above, the ALJ sufficiently articulated his reasons for discounting Ms. Kracker and Dr. Brooks's findings of marked limitations and symptom exacerbation under stress. Nonetheless, the ALJ accommodated the opined exacerbated symptoms under stress by limiting Plaintiff to simple, routine tasks; occasional social interaction; and infrequent changes in the work setting "to avoid stressful situation[s] which might exacerbate his mental symptoms." (PageID.43–44.)

Plaintiff fails to assert any discernable error by the ALJ in evaluating the opinion evidence. Instead, essentially relying an argument from his first ground of error, Plaintiff contends that the ALJ failed to properly consider his degree of mental impairment in light of the many findings of moderate mental limitation which, Plaintiff argues, amount to a 30% loss of function. Plaintiff contends that, had the ALJ's RFC finding and hypothetical question to the VE specifically referenced Plaintiff's moderate mental limitations, the RFC would not have supported full-time competitive employment. (ECF No. 9 at PageID.682–83.) This argument fails for the reasons set forth above and, more generally, because the ALJ's numerous limitations in his RFC determination adequately addressed Plaintiff's moderate limitations.

In addition, Plaintiff's reliance on *Green* for the proposition that a moderate limitation equates to a 20% to 30% loss of functioning lacks merit. As already discussed, the issue in *Green* was whether the ALJ erred in failing to account for the plaintiff's moderate CPP limitations in his

13

RFC finding and hypothetical. 2009 WL 2365557, at *9–10. As noted in *Bromley v. Commissioner of Social Security*, No. 16-12837, 2017 WL 9471674, at *8 (E.D. Mich. Sept. 15, 2017), *report and recommendation adopted*, 2017 WL 6616728 (E.D. Mich. Dec. 28, 2017), "[t]hough the [*Green*] court included dicta suggesting that moderate CPP reasonably means 20%-30% of the time, the critical inquiry the court focused on was whether the description provided to the VE reflected the claimant's actual limitations based on the record before the court." Here, the ALJ's hypothetical was supported by substantial evidence and accounted for Plaintiff's mental limitations. Plaintiff's argument to the contrary is nothing more than a request that the Court reweigh the evidence and reach a different decision, which it may not do. Therefore, this claim of error fails.

### III.  Failure to Consider VA Records

Last, Plaintiff contends that the ALJ erred in failing to consider the records underlying his VA disability benefits award from March 2, 2022. (PageID.283–87.) Plaintiff asserts the records supported his disability claim because, during the time the ALJ found that Plaintiff's mental disability had decreased, the VA increased his disability rating from 30% to 40%.[3] Plaintiff acknowledges that the underlying evidence was not part of the record, but he argues that the ALJ was "supposed to complete the record and consider it all in determining the claimant's status." (ECF No. 9 at PageID.684–85.)

Sixth Circuit authority provides that the claimant has the ultimate burden to prove disability. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008). The claimant must provide an adequate record on which the ALJ can make an informed decision regarding the claimant's

---

[3] Contrary to Plaintiff's assertion, his VA rating did not increase due to his mental impairments. Rather, the VA assigned the additional ten percent for tinnitus. (PageID.285.)

disability status. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). However, an ALJ is responsible for "ensuring that every claimant receives a full and fair hearing[.]" *Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). This responsibility is balanced with the fact that "[p]romoting the claimant's case . . . is not the ALJ's obligation," because they are "a neutral factfinder, not an advocate." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) (citing *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (plurality opinion)). "So while the ALJ must ensure that every claimant receives 'a full and fair hearing,' the ultimate burden of proving entitlement to benefits lies with the claimant." *Id.* (quoting *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 856 (6th Cir. 1986)) (citing 20 C.F.R. § 404.1512(a)).

The ALJ may have "a special, heightened duty to develop the record" in certain circumstances. *Wilson*, 280 F. App'x at 459. This heightened duty arises if "a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Id.* Here, the circumstances do not show that the ALJ had a heightened duty to develop the record. During the hearing, Plaintiff was represented by experienced counsel who was aware of the VA rating decision. The VA decision itself was in the record, and counsel expressly mentioned it during the hearing. (PageID.59.) Even though counsel was aware of the decision, when asked by the ALJ about the status of the record, he responded, "I consider the record to be complete." (PageID.58.) Certainly, counsel was aware of the records and could have obtained them himself or requested the ALJ to do so if he was having difficulty obtaining them. Thus, the ALJ was justified in relying on counsel's representation that he had no additional evidence to present. *See Owens v. Berryhill*, No. 1:18CV1043, 2019 WL 2465229, at *12 (N.D. Ohio Feb. 13, 2019), *report and recommendation adopted*, 2019 WL 1929695 (N.D. Ohio Apr. 30, 2019) (noting that

"an ALJ is permitted to presume a claimant represented by counsel has presented the best case before the ALJ") (citing, among others, *Lashley*, 708 F.2d at 1051–52).

Finally, an ALJ does not err in failing to obtain additional evidence if the record contains a "considerable amount of evidence" pertaining to the claimant's limitations. *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013). Here, as set forth above, the record contained sufficient evidence to allow the ALJ to properly assess Plaintiff's mental impairments and articulate appropriate mental limitations in his RFC finding and hypothetical. Accordingly, the Court rejects this ground of error.

## **CONCLUSION**

For the reasons stated above, the Court concludes that the ALJ's decision applies the proper legal standards and is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

An order consistent with this opinion will enter.

Dated: April 8, 2024  /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge